NO. 4-95-0597

                          IN THE APPELLATE COURT

                                OF ILLINOIS

                              FOURTH DISTRICT

THE PEOPLE OF THE STATE OF ILLINOIS,    )    Appeal from

          Plaintiff-Appellee,           )    Circuit Court of

          v.                            )    Vermilion County

DALE L. ATKINSON,                       )    No. 94CF101

          Defendant-Appellant.          )

                                        )    Honorable

                                        )    Thomas J. Fahey,

                                        )    Judge Presiding.

_________________________________________________________________

          JUSTICE COOK delivered the opinion of the court:

          Following a jury trial, defendant Dale Atkinson was

convicted of burglary in violation of section 19-1(a) of the

Illinois Criminal Code of 1961 (720 ILCS 5/19-1(a) (West 1992)). 

Defendant was sentenced to six years' imprisonment.  Defendant

appeals, alleging (1) the trial court erred in failing to employ

the Montgomery balancing test before allowing the State to

impeach him with his prior convictions, (2) the trial court erred

in refusing to allow the "mere fact" approach to impeaching with

a prior conviction, and (3) that the inclusion of this evidence

was reversible error.  We reverse and remand.

          In March 1994, Nathan Reitsman was driving around with

three friends in a 1984 Chrysler LeBaron.  When the car stalled 

and Nathan could not get it started again, he and his friends

left the car to go call Nathan's mother.  Upon their return 15

minutes later, they discovered that a window had been "pried

down" and the dashboard had been torn apart.  The AM-FM cassette

stereo and an equalizer were missing.

          On the same day, Herb Simmons was driving around with

defendant, Dale Juvinall, and Steve Robbins.  They passed

Nathan's car and stopped.  According to defendant, Simmons and

Juvinall thought the car may have a stereo and a "fuzz buster." 

Juvinall and defendant exited Simmons' car; defendant claimed he

did so at Juvinall's request.  Simmons drove away because he did

not want his car to be seen "if they did something."

          Juvinall entered Nathan's car and removed the stereo

and the equalizer.  According to Juvinall, he removed the AM-FM

cassette player, which he then handed to defendant.  Juvinall

said he never touched the AM-FM cassette player again.  Juvinall

then removed the equalizer.  Defendant claimed that he stood by

the side of the road the entire time because he "wasn't going

over to the vehicle."  Defendant testified that he was not acting

as a "lookout" for Juvinall.  Simmons then returned and both

Juvinall and defendant got back into Simmons' car.  Simmons

testified that Juvinall had both the AM-FM cassette player and

the equalizer under his coat when he got back into the car.

          According to defendant, the group then returned to his

trailer.  Defendant testified that the AM-FM cassette player and

the equalizer were held together with black electrical tape and

that Juvinall separated the two components at defendant's trail-

er.  Although it is unclear when it happened, at some point that

evening the group tried to sell the equalizer to "JR," one of

defendant's friends.  "JR" did not buy the equalizer, so Juvinall

kept it.  Defendant kept the stereo.

          After defendant's testimony, and over defendant's

objection, the State impeached defendant with evidence of

defendant's two prior burglary convictions.  The jury found

defendant guilty and the court sentenced him to six years'

imprisonment.  Defendant now appeals.

          The admission of prior convictions to impeach a witness

is problematic.  This is especially true where the witness is a

defendant in a criminal trial.

          "If [a criminal defendant] testifies and is

          impeached with prior convictions, he risks

          conviction upon the current charge simply

          because the jury thinks he is a bad man.  ***

          If the defendant, in the alternative, chooses

          to remain silent, the jury may conclude that

          he is guilty despite instructions that no

          inference is to be drawn against him given

          his failure to testify.  [Citation.]  On the

          other hand, in support of the use of prior

          convictions, it is asserted 'that it would be

          misleading to permit the accused to appear as

          a witness of blameless life.'  McCormick,

          Evidence §42 at 153 (4th ed. 1992).  M. Gra-

          ham, Cleary & Graham's Handbook of Illinois

          Evidence §609.1, at 411 (6th ed. 1994) (here-

          inafter Graham).

Addressing this problem in People v. Montgomery, 47 Ill. 2d 510,

268 N.E.2d 695 (1971), the supreme court embraced the balancing

test set forth by Rule 609 of the Federal Rules of Evidence (Fed.

R. Evid. 609).

          The Montgomery court provided that, for the purposes of

attacking a witness' credibility, evidence of a prior conviction

is admissible only if (1) the crime is punishable by death or

imprisonment in excess of one year, or (2) the crime involved

dishonesty or false statement regardless of the punishment.  In

either case, however, the evidence is inadmissible if the judge

determines that the probative value of the evidence of the crime

is substantially outweighed by the danger of unfair prejudice. 

Additionally, the Montgomery rule prohibits admission of this

evidence if a period of more than 10 years has elapsed since the

date of conviction or release of the witness from confinement,

whichever is later.  Montgomery, 47 Ill. 2d at 516, 268 N.E.2d at

698.  The supreme court has reaffirmed the Montgomery rule in two

recent cases.  People v. Williams, 161 Ill. 2d 1, 641 N.E.2d 296

(1994) (expressing concern over the mechanical application of the

Montgomery rule); People v. Williams, 173 Ill. 2d 48, 670 N.E.2d

638 (1996) (reaffirming the continuing validity of the Montgomery

rule).

          Defendant argues that the trial court erred in allowing

the prosecutor to inform the jury that his prior convictions were

for burglary.  Defendant had asked that the trial court use the

mere fact method of impeachment.  The mere fact method was not

used, and defendant argues that this was reversible error.

          Under the mere fact method, the trial court informs the

jury of the felony conviction and of the date and county in which

it occurred.  See People v. Kunze, 193 Ill. App. 3d 708, 731, 550

N.E.2d 284, 299 (1990) (Steigmann, J., specially concurring)

(thoroughly reviewing the cases in Illinois and in other juris-

dictions).  The court does not tell the jury the nature of the

felony.  After informing the jury of the defendant's prior

conviction, the trial court should orally instruct the jury in

accordance with Illinois Pattern Jury Instructions, Criminal, No.

3.13 (3d ed. 1992), unless the defendant indicates that it does

not wish that the instruction be given.  Kunze, 193 Ill. App. 3d

at 731, 550 N.E.2d at 299 (Steigmann, J., specially concurring). 

The decision whether to use the mere fact method is a matter of

discretion.  People v. Jennings, 279 Ill. App. 3d 406, 412, 664

N.E.2d 699, 704 (1996).

          The "mere fact" approach of impeaching a defendant with

a prior conviction helps balance the competing interests of the

State and the defendant, and is especially useful where the prior

convictions are similar to the crime charged.  This is because

the "more similar the prior offense to the crime charged, the

stronger the natural though impermissible inference likely to be

drawn by the jury that, if the defendant did it before, he

probably did it this time."  Graham §609.1, at 411.  Under these

circumstances, the mere fact method avoids the danger the jury

will use the prior conviction to evaluate a defendant's propensi-

ty to commit crime.  Jennings, 279 Ill. App. 3d at 412, 664

N.E.2d at 704.

          In the instant case, defense counsel asked the trial

court to use the mere fact method for defendant's impeachment. 

The State's Attorney argued that the impeachment should be done

as it had been done in the past:  "[t]hat either the Court or

counsel would read *** the conviction, the date, the case number

into the record."  The judge replied, "You may."  In rebuttal,

the State impeached defendant with a 1992 burglary conviction. 

The defendant objected and the court told the State to proceed. 

The State then impeached defendant with a 1993 burglary convic-

tion.  Defendant again objected.  At a side bar, defense counsel

moved for a mistrial based upon the method of the impeachment. 

The judge replied, "If they want to reverse me on that just tell

them to go right ahead.  *** It makes no sense to [impeach a

defendant] any other way."

          At the hearing on defendant's post-trial motion, in

discussing the use of the mere fact method, the trial judge

stated:

          "[T]he rationale of Judge Steigmann in doing

          something like that is absolutely beyond me. 

          By his rationale I would suspect defense

          attorneys, if there's an innocuous felony the

          next time around or a very serious case,

          rather than saying felony they will be asking

          that the more innocuous felony be proved up. 

          It is an absolute bag of worms."

          This case presented an ideal situation for use of the

mere fact method.  In employing the Montgomery rule, the trial

court should first apply the mechanical prongs of the rule; that

is, the trial court should determine if the prior conviction(s)

fit within the Montgomery categories and whether they meet the

timeliness requirement.  If the prior conviction(s) qualify under

the mechanical prongs, the trial court should then employ the

balancing test.  In determining whether the probative value of

the evidence sought to be admitted is substantially outweighed by

the danger of unfair prejudice, the court should consider eviden-

tiary alternatives.  See Old Chief v. United States,  ___ U.S.

___, 136 L. Ed. 2d 574, 117 S. Ct. 644 (1997).  One of these

evidentiary alternatives is the mere fact method of impeachment.

          The trial court was probably correct in noting that

defendants will seek to use the impeachment method that is the

least prejudicial to them:  if the prior felony was for a serious

crime, defendants will seek to use the mere fact method, but if

the prior felony was not so serious, they will seek to have the

name of the conviction entered.  Given that one purpose of the

balancing test is to minimize the danger of unfair prejudice to

the defendant, we fail to see how this creates a problem.  It has

been noted that there are three exceptions to the mere fact

method.  One exception is when "the defendant chooses to have the

jury informed of his prior conviction for impeachment purposes in

the traditional way, including the name of the offense(s) of

which he stands convicted."  Kunze, 193 Ill. App. 3d at 732, 550

N.E.2d at 300 (Steigmann, J., specially concurring).

          We conclude that the trial judge abused his discretion

in allowing the State to give the name of the prior offenses 

when impeaching defendant.  "[I]t is difficult to justify [the]

continued use of [a] *** method that *** tends to maximize the

prejudicial effect and potential error of admitting the prior

conviction to impeach the defendant."  Jennings, 279 Ill. App. 3d

at 414, 664 N.E.2d at 706 (Steigmann, J., specially concurring). 

          We note that, although not raised by either party,

defendant's prior burglary convictions may have been admissible

as substantive evidence of defendant's intent.  While evidence of

prior acts and offenses may not be introduced to show propensity

to commit crime, such evidence is admissible if it tends to prove

modus operandi, design, motive, knowledge, or intent.  People v.

Oaks, 169 Ill. 2d 409, 454, 662 N.E.2d 1328, 1348 (1996).  The

record is unclear as to the exact nature of defendant's prior

burglary convictions, but at sentencing defense counsel argued

for the minimum, noting that defendant "has been convicted of

what are essentially midnight auto burglaries."  Nevertheless,

the issue was not raised either in the trial court or in this

court, and we decline to consider it.  

          The State argues that any error was harmless.  Error is

harmless if it did not contribute to the conviction, if other

evidence in the case overwhelmingly supports the conviction, or

if the evidence improperly allowed merely duplicated properly

admitted evidence.  People v. Durgan, 281 Ill. App. 3d 863, 868,

667 N.E.2d 730, 733-34 (1996); People v. Wilkerson, 87 Ill. 2d

151, 157, 429 N.E.2d 526, 528 (1981).  As discussed above,

evidence of prior convictions has long been recognized as prob-

lematic.  The erroneous evidence of other crimes evidence ordi-

narily calls for reversal unless the record affirmatively demon-

strates that no prejudice occurred.  People v. Lindgren, 79 Ill.

2d 129, 140-41, 402 N.E.2d 238, 244 (1980).  A number of cases

over the years have found no prejudice, even where the prior

convictions were for the identical offense being considered by

the jury, but the recent Williams cases decided by the supreme

court indicate a heightened concern for a real balancing of

probative value against unfair prejudice. 

          The evidence in the present case is not overwhelming. 

Defendant was shown to be present at the crime scene, but such

presence, even when coupled with the knowledge that a crime is

being committed, does not render one accountable for the crime. 

People v. Taylor, 164 Ill. 2d 131, 140, 646 N.E.2d 567, 571

(1995).  Defendant testified that the crime was committed by Dale

Juvinall, that defendant remained at a distance while the crime

was being committed, and that defendant did not act as a lookout. 

Although defendant eventually received one of the stolen items,

the evidence is not overwhelming that defendant shared a common

criminal design or criminal intent with Juvinall at the time the

crime was committed.  Thus, reversal is warranted.  There was

sufficient evidence presented of defendant's guilt, however, that

this case must be remanded for a new trial.

          Reversed and remanded for a new trial.  

          STEIGMANN, P.J., concurs.

          GREEN, J., dissents.

          JUSTICE GREEN, dissenting:

          I agree that the situation here is a perfect example of

where the balancing test of Montgomery would be best served by

use of the "mere fact" method of impeachment of a testifying

defendant.  However, I am also concerned with the position of the

circuit judge that the "mere fact" method is not yet required in

this State even under the compelling circumstances of this case. 

The Supreme Court of Illinois has never applied or discussed the

rule even under compelling circumstances.

          In Williams (161 Ill. 2d 1, 641 N.E.2d 296), the

circumstances favoring use of the "mere fact" rule was even

stronger than here, as the court held that impeachment of a

defendant charged with murder by introduction of his conviction

for voluntary manslaughter, although error, was not reversible

error.  In Williams (173 Ill. 2d 48, 670 N.E.2d 638), the argu-

ment for use of the "mere fact" rule was less compelling, but its

use would still have been helpful.  There, the major thrust of

the prosecution's charges was murder and the supreme court held

the defendant was properly impeached by evidence of his prior

conviction for aggravated battery.  Thus, in both Williams cases,

convictions for crimes of violence were used to impeach defen-

dants charged with murder.

          Absent precedent requiring application of the "mere

fact" rule, I do not deem the conviction of defendant here was

error.  He was impeached on a prior conviction of burglary, the

very offense with which he was charged, but the court did apply

the balancing test.  Unlike the impeaching evidence in the

Williams cases, the impeaching evidence in this case involved

dishonesty, a factor given great significance for its probative

value in regard to the veracity of the defendant.  See Montgom-

ery, 47 Ill. 2d at 516, 268 N.E.2d at 698.

          Accordingly, I would affirm.